[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15565
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 00-14056-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

STANLEY GEORGE LAWES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 4, 2006)**

Before ANDERSON, BIRCH and MARCUS, Circuit Judges.

PER CURIAM:

Stanley Lawes appeals his 168-month sentence, which was imposed after he pled guilty to possessing with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On appeal, Lawes argues that the

district court erred by (1) sentencing him under a mandatory Guidelines scheme, in violation of United States v. Booker, 543 U.S. 220 (2005); and (2) relying on prior convictions, which were neither charged in the indictment nor found by a jury, to enhance his sentence.[1]  After careful review, we affirm.

The relevant facts are straightforward.  On August 31, 2000, Lawes was indicted for  possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) (Count 1).  At his arraignment before a magistrate judge, Lawes pled not guilty.  He subsequently changed his plea to guilty, pursuant to a written plea agreement with the government, and proceeded to sentencing.

According to the presentence investigation report ("PSI"), Lawes sold 55.3 grams of cocaine base to a confidential source working with Drug Enforcement Administration ("DEA").  Based on this amount of cocaine base, the PSI calculated

---

[1]We reject Lawes's additional argument that the district court erred by granting only a horizontal downward departure and denying his request for an additional vertical downward departure based on alleged over-representation of the seriousness of his prior crimes.  Our review of the record reveals no indication that the district court thought it lacked authority to grant the departure.  Accordingly, we will not review the denial of Lawes's requested vertical departure.  See United States v. Anderson, 326 F.3d 1319, 1333 (11th Cir. 2003) ("A defendant may not ordinarily appeal a district court's refusal to grant a downward departure.  Where the court erroneously believed that it lacked the authority to grant the downward departure, however, the defendant may appeal the court's failure to downward depart" (emphasis added)); United States v. Smith, 289 F.3d 696, 710-11 (11th Cir. 2002) (holding that departure based upon the over-representation of a defendant's criminal history must proceed under U.S.S.G. § 4A1.3 and not U.S.S.G. § 5K2.0; "downward departures under U.S.S.G. § 4A1.3 must be on the horizontal axis, reflecting the offender's criminal history category, and not on the vertical axis, reflecting his offense level").

a base offense level, pursuant to U.S.S.G. § 2D1.1(a)(3), of 32. The PSI then recommended a career-offender enhancement, pursuant to U.S.S.G. § 4B1.1, because the instant offense was a controlled-substance felony offense and Lawes had at least two prior controlled-substance felony convictions. After a 3-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b), Lawes's adjusted offense level was 34.

In calculating Lawes's criminal history category, the PSI included a description of the two prior controlled-substance felony convictions that qualified Lawes for the career-offender enhancement under § 4B1.1. The PSI further noted that Lawes had a total of two criminal history points, which normally would accord him a criminal history category of II. But the PSI recommended, based on Lawes's career-offender status, a criminal history category VI. Lawes faced a mandatory minimum sentence of ten years' imprisonment and a maximum of life imprisonment under 21 U.S.C. § 841(b)(1)(A). The Guidelines range was 262-327 months' imprisonment.

Lawes objected to the enhanced criminal history category of VI, arguing that it significantly over-represented the seriousness of his criminal history or the likelihood that he would commit further crimes. He also objected to the PSI's failure to recommend a downward departure because the enhanced sentence was

not in furtherance of an allowable purpose under 18 U.S.C. 3553(a). At the subsequent sentencing hearing, he also asserted he was entitled to an additional downward departure based on his limited education and minimal criminal record. The government agreed with Lawes's argument that a category VI overstated his criminal history, but objected to Lawes's suggestion that he was entitled to a criminal history category I. In response to these arguments, the district court observed that there were "strong arguments to be made that no horizontal departure [was] appropriate" and that the government was being "benevolent" in not opposing it.

Regarding Lawes's request for a § 5K2 departure, the court denied it, finding that the instant case was not outside the heartland and stating that "it's a fairly typical case. Unfortunately, by operation of law and the guidelines, the sentence is very harsh, which is causing all of us to pause to some extent." The court also addressed Lawes's objection that a category VI over-represented his criminal history. The district court first noted that it had discretion to depart horizontally across the criminal history category. Based on its determination that a category VI was not appropriate, and considering the pattern and timing of Lawes's previous convictions, the district court departed to a category II criminal history. In deciding against departing to a category I criminal history, the court

4

commented that, "[c]ategory one, where someone has no previous criminal offenses, is sort of inconsistent with the whole career criminal concept." The court further explained that "though still harsh, a category two would adequately represent the Defendant's criminal history over a lengthy period of time."

After the foregoing adjustments to Lawes's criminal history category, the district court calculated a new Guidelines range of 168 to 210 months. The district court stated that "[b]ased on the lengthy sentence afforded by the guideline range, the Court will impose a sentence at the bottom of the range." The court then sentenced Lawes to a 168-month term of imprisonment followed by a 5-year term of supervised release. This appeal followed.

Because Lawes raises his Booker claim for the first time on appeal, our review is for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied, 125 S.Ct. 2935 (2005). In order for us to correct plain error: (1) there must be error, (2) the error must be plain, and (3) the error must affect substantial rights. Id. "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted). Under the third prong, the appellant bears the burden to show that the error "affected substantial rights, which almost always

requires that the error must have affected the outcome of the district court proceedings. The standard for showing that is the familiar reasonable probability of a different result formulation, which means a probability sufficient to undermine confidence in the outcome." Id. at 1299 (alteration and quotations omitted). "[W]here the effect of an error on the result in the district court is uncertain or indeterminate–where we would have to speculate–the appellant has not met his burden of showing a reasonable probability that the result would have been different but for the error . . . ." Id. at 1301.

In United States v. Shelton, we recognized that there are two types of Booker error: (1) the Sixth Amendment "constitutional" error of using judge-found facts to increase a defendant's sentence under a mandatory guideline system; and (2) the "statutory" error of applying the Guidelines as mandatory, as opposed to advisory. 400 F.3d 1325, 1329-31 (11th Cir. 2005). Lawes asserts that both types of Booker error occurred here.

First, after calculating the new Guidelines range, the district court committed statutory Booker error by applying the Guidelines in a mandatory fashion. But in order to prove that the error affected his substantial rights under the third prong of plain-error review, a defendant must demonstrate "a reasonable probability of a different result if the guidelines had been applied in an advisory instead of binding

6

fashion by the sentencing judge in this case." United States v. Rodriguez, 398 F.3d 1291, 1301 (11th Cir.), cert. denied, 125 S. Ct. 2935 (2005). Where "[t]he record provides no reason to believe any result is more likely than the other," a defendant cannot prevail under plain-error review. Id.

Here, Lawes does not point to anything in the record that would satisfy his burden of showing a reasonable probability that he would have received a lesser sentence had he been sentenced under an advisory scheme. While the district court stated that Lawes's criminal history resulted in a "lengthy" sentence under the Guidelines, the court did not say, or in any way imply, that it was inclined to impose a lower sentence if not bound by the Guidelines. Moreover, at no point during the proceedings did the court mention that the lengthy sentence was tied in any way to the mandatory nature of the Guidelines. Simply put, Lawes has not demonstrated a reasonable probability of a lesser sentence under an advisory system. Accordingly, the district court did not commit reversible plain error under the statutory component of Booker.

We also reject Lawes's argument that the district court erred when it imposed sentence pursuant to the career-offender provisions by relying on prior convictions that were neither charged in the indictment nor found by a jury. As Lawes acknowledges, we have held that a district court does not commit Booker

constitutional error when it applies a career-offender enhancement based on previous convictions, pursuant to Almendarez-Torres v. United States, 523 U.S. 224 (1998), which remains binding on this Court.

In Almendarez-Torres, the Supreme Court held that "[a]n indictment must set forth each element of the crime that it charges [,b]ut it need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." Id. at 228 (citation omitted). Before Booker, we held that Almendarez-Torres remained good law. United States v. Marseille, 377 F.3d 1249, 1257-58, n.14 (11th Cir.), cert. denied, 543 U.S. 1013 (2004). And after Booker, we observed that Almendarez-Torres "was left undisturbed by Apprendi, Blakely, and Booker," and that "a district court does not err by relying on prior convictions to enhance a defendant's sentence." Shelton, 400 F.3d at 1329. Because the Supreme Court has not overruled Almendarez-Torres, the district court did not err when it applied the U.S.S.G. § 4B1.1 career-offender enhancement, relying on two prior qualifying convictions that were neither alleged in the indictment nor proven to a jury.

**AFFIRMED.**